# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4874 | **DATE** | 8/16/2002 |
| **CASE TITLE** | | Steven Bacidore vs. Jo Anne Barnhart | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#16] is denied; the Commissioner's Cross-motion for Summary Judgment [#18] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **2** number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 1 9 2002 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/16/2002 | |
| | | | date mailed notice | |
| FT/ | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 AUG 16 PM 2: 20 Date/time received in central Clerk's Office | FT mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Steven P. Bacidore            )
                              )
         Plaintiff,           )
                              )    Case No. 01 C 4874
    v.                        )
                              )    Magistrate Judge
Jo Anne B. Barnhart[1], Commissioner )    Arlander Keys
of Social Security,           )
                              )
         Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Steven P. Bacidore, moves this Court for Summary Judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, reversing the final decision of the Commissioner of Social Security, which denied his claim for Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 405(g)(West 2002). The Commissioner has filed a Cross-Motion for Summary Judgment. For the reasons set forth below, the Court denies Plaintiff's Motion and grants the Commissioner's Cross-Motion for Summary Judgment.

---

[1]On November 9, 2001, Jo Anne B. Barnhart became the Commissioner of Social Security. Ms. Barnhart is automatically substituted for Mr. Larry Massanari as the Defendant in this action. Fed.R.Civ.P. 25(d)(1); 42 U.S.C. § 405(g) (2002).

## PROCEDURAL HISTORY

On October 6, 1997, Plaintiff filed a claim for SSI. (R. at 14.) The Commissioner denied Plaintiff's claim, and Plaintiff filed for reconsideration on March 30, 1998. (R. at 79.) His request for reconsideration was also denied. (R. at 14, 81.) Then, Plaintiff requested and received a hearing before Administrative Law Judge ("ALJ") Barbara J. Welsch on May 12, 1999. (R. at 30-71.) On November 16, 1999, the ALJ issued her decision denying Plaintiff's claim for SSI. (R. at 14-21.) On January 11, 2000, the Appeals Council denied his request for review of the ALJ's decision. (R. at 6.) Therefore, the ALJ's decision stands as the Commissioner's final decision, and is the subject of the Motions now before the Court.

## BACKGROUND

The evidence before this Court is comprised of the following: 1) the testimony of Plaintiff, his father, his former supervisor, and the vocational expert ("VE"); and 2) numerous medical records and reports received by the ALJ.

**A.  Testimonial Evidence**

1.  Steven P. Bacidore, Plaintiff

Plaintiff was born on October 15, 1955, in LaSalle, Illinois. (R. at 14.)  Plaintiff testified that he was then 43 years old and has a high school education. (R. at 33-35.) Plaintiff explained that he lives at home with his parents. (R. at 33.)

Plaintiff testified that he was unable to work five days a week, eight hours a day, due to the lasting effect of an aneurysm, his susceptibility to seizures, and his right buttock pain. (R. at 37, 42, 43.)  Plaintiff explained that the aneurysm he suffered in 1980 decreased his cognitive abilities. (R. at 42.)  Plaintiff testified that, since his aneurysm, he has been unable to hold a job. (Id.)  Plaintiff also described additional infirmities that impair his work ability.  Plaintiff suffered three seizures in the recent past, the most recent in January 1998. (R. at 37.)  Plaintiff testified that his right buttock pain decreased his strength. (R. at 43.)  Plaintiff experienced this pain every morning, but was able to neutralize the pain by taking aspirin. (Id.)

Plaintiff acknowledged his substance abuse history. Plaintiff testified that he normally drinks about six cans of beer per day, and that he currently does not use any illegal

3

drugs. (R. at 38.) He acknowledged that his drinking most likely
caused him to lose a lawn maintenance job. (R. at 45, 46.)
Plaintiff admitted that North Central Behavioral Health Systems,
Inc. ("NCBHS") refused to continue treating him for alcoholism,
because he was unable to stop his chronic drinking. (R. at 41,
42.)

Plaintiff testified that he performs odd jobs for family,
friends, and neighbors in consonance with his employment history
as a maintenance worker. (R. at 34, 38.) Plaintiff described
some of his daily activities. At his cousin's tavern, Plaintiff
worked to clean the bathroom floors five days a week for two to
three hours per day. (R. at 34, 35.) Plaintiff testified that he
mows the lawns of friends and neighbors every three to four days.
(R. at 34.) Plaintiff also stated that he helps with some
household chores, such as dish washing and grocery shopping.
(Id.)


2.   Edward J. Bacidore, Plaintiff's father

Mr. Edward J. Bacidore testified that he and his wife
remained responsible for Plaintiff's daily supervision. (R. at
53.) Mr. Bacidore explained that Plaintiff has been unable to
hold a job, since his aneurysm in 1980. (R. at 51.) In addition,
Plaintiff is unable to care for himself and has been financially

4

dependent upon his parents. (R. at 53, 54.) Mr. Bacidore testified that Plaintiff has short-term memory difficulties. (R. at 54.) Also, Plaintiff's concentration became markedly diminished, and his personality became altered as he began to mumble to himself every night. (R. at 51, 52.) In Mr. Bacidore's opinion, Plaintiff became an undesirable employee because of his impairments. (Id.) For example, one of Plaintiff's employers even characterized him as a hazard at the workplace. (Id.)

Mr. Bacidore reluctantly admitted that Plaintiff was an alcoholic prior to his aneurysm in 1980, and that, in 1998, Plaintiff's doctors discontinued his alcohol treatment program at NCBHS, because he was unable to stop his chronic drinking. (R. at 52.)


3.   Josephine Murphy, Plaintiff's former supervisor

Ms. Murphy supervised Plaintiff when he was employed by LaSalle Township as a handyman in the 1980s.(R. at 58, 162.) Ms. Murphy testified that, in her opinion, Plaintiff was not capable of holding a job. (R. at 61.) Ms. Murphy explained that Plaintiff was required to perform light landscaping work, for only four continuous days per month, yet he would fail to complete the four-day duration of work. (R. at 58, 59.) Ms. Murphy found Plaintiff to be unreliable. (Id.) Inevitably,

Plaintiff was fired, because he failed to show up for work and failed to follow directions. (Id.)

4. Mr. Dennis Gustafson, VE

Mr. Dennis Gustafson testified at Plaintiff's hearing as the VE. (R. at 47.) The ALJ posed the following hypothetical to the VE: what jobs are available to a 43 year-old male who has a high school education, has no past relevant work experience, and is limited to medium work that does not involve climbing or working at unprotected heights and involves routine and repetitive tasks? (R. at 47, 48.) The VE testified that there were a significant number of jobs in Illinois available to a person of Plaintiff's age, education, and functional limitations. (Id.) Specifically, the VE provided the following three job categories and their available numbers in Illinois: hand packaging (medium, 7,440; light, 12,100); hand assembly (medium, 14,770; light, 35,325; sedentary, 7,700); and production inspection (medium, 900; light, 12,450; sedentary, 1670.) (R. at 48.) The ALJ supplemented her previous hypothetical by asking the VE whether these occupations would subject Plaintiff to regular interaction with other people. (Id.) The VE testified that these occupations did not require regular interaction with other people, but did involve some

6

interaction with a supervisor, such as when rare assembly line changes occur. (Id.)

Upon questioning by Plaintiff's attorney, however, the VE conceded that, if that same hypothetical individual also reacted poorly to supervision, had difficulty adjusting to new circumstances, and had difficulties in showing up for work, then employment would be ruled out for such an individual. (R. at 49.)

## B.  Medical Evidence

Summarized below are the following medical records and reports received by the ALJ: 1) the hospital medical records regarding Plaintiff's history of an aneurysm, history of seizures, discharge from an outpatient alcohol treatment program, and right buttock pain diagnosis; 2) the crucial reports of the comprehensive examinations performed by Dr. Langgut and Dr. Chuprevich, which assessed Plaintiff's mental impairments; and 3) the reports of the Social Security Administration's non-examining, consulting physicians, which assessed Plaintiff's physical as well as mental residual functional capacity ("RFC").

1.    St. Francis Hospital Records 4/22/80 to 5/04/80

In 1980, Plaintiff experienced a sudden onset of severe headaches and lethargy. (R. at 296.)  Plaintiff was diagnosed

7

with a brain aneurysm. (Id.) Dr. William Hanigan performed a left frontal craniotomy on Plaintiff. (R. at 302.) Plaintiff's brain aneurysm was successfully clipped. (R. at 296.) Upon discharge, Plaintiff was diagnosed with a subarachnoid hemorrhage secondary to anterior communicating artery aneurysm and an impulsive personality disorder. (Id.)

2. Illinois Valley Community Hospital ("IVCH") Records from 7/09/97 Admission through 7/18/97 Discharge

In July 1997, Plaintiff was admitted to the IVCH, after suffering two grand mal seizures. (R. at 179.) Dr. Maya Jagasia examined Plaintiff and determined that Plaintiff's seizures most likely were related to his history of alcohol abuse. (R. at 180.) Next, Dr. Chuprevich examined Plaintiff and also attributed Plaintiff's seizures to alcohol withdrawal. (R. at 181.) Plaintiff admitted that he gave up alcohol for approximately a week. (Id.) Dr. R. Garg concurred with Dr. Chuprevich's diagnosis. (R. at 182.) Lastly, Dr. Stephen Lukancic determined that Plaintiff's CT scan revealed mild diffuse cerebral atrophy. (R. at 183.)

On July 18, 1997, Dr. Chuprevich discharged Plaintiff from IVCH with a diagnosis of Abstinence Syndrome and Organic Delusional Disorder secondary to Abstinence Syndrome. (R. at

8

191.) Dr. Chuprevich determined that, although Plaintiff
displayed some delusional thinking, paranoia, anxiety, and
agitation, his overall condition on discharge was stable. (R. at
191, 193.) Dr. Chuprevich determined that Plaintiff was oriented
to reality and had no signs of depression or hallucinations. (R.
at 193.)


3. North Central Behavioral Health Systems, Inc. ("NCBHS")
   Medical Records.

On August 5, 1997, Plaintiff began treatment in an
outpatient alcohol treatment program supervised by Dr.
Chuprevich. (R. at 271.) In February 1998, Plaintiff was
discharged from the outpatient alcohol treatment program on the
grounds of futility, because he would not stop abusing alcohol.
(R. at 259, 260.) Plaintiff admitted that he had a habit of
drinking six cans of beer per day. (R. at 261.)

4. Rito B. Maningo, M.D., non-treating, examining physician

On January 5, 1998, Dr. Maningo examined Plaintiff at the
request of the Commissioner. (R. at 224.) Dr. Maningo concluded
that Plaintiff was a "fairly well developed, well nourished male
in no apparent distress." (R. at 225.) Dr. Maningo remarked that
Plaintiff was unable to hold steady employment due to his
alcoholism. (R. at 224.) Notably, Plaintiff suffered a grand mal

9

seizure of two-minute duration during the examination. (R. at 226, 227.)

5.    Dr Vijay Desai, M.D., treating emergency room physician

On January 5, 1998, Dr. Desai examined Plaintiff at Morris Hospital in Morris, IL, after Plaintiff experienced a grand mal seizure in Dr. Maningo's office. (R. at 229.)  Dr. Desai attributed Plaintiff's seizure disorder to alcohol withdrawal. (Id.)  Dr. Desai did not find evidence of mild diffuse cerebral atrophy after examining Plaintiff's CT scan. (R. at 230.) Notably, a drug screen emergency urinalysis indicated a positive response for the category of drugs known as cannabinoids. (R. at 233.)

6.    Dr. Joel Leifheit, MD, treating physician

On October, 22, 1998, Plaintiff visited Dr. Leifheit, because of a persistent, right buttock pain that radiated down Plaintiff's right leg. (R. at 311.)  On December 3, 1998, Dr. Leifheit ordered a lumbar spine examination to investigate Plaintiff's pain, which resulted after several falls from his bike. (R. at 313, 314.)  The examination revealed that Plaintiff had mild degenerative disease within the facets joints throughout the lumbar spine. (R. at 325.)  Dr. Leifheit characterized the

test results regarding Plaintiff's ankle, knee, and hip as unremarkable. (R. at 324, 326, 327.)

7.    Mark B. Langgut, PhD., non-treating, examining physician

Dr. Langgut examined Plaintiff on December 20, 1997 and again on June 25, 1999, at the request of the Social Security Administration ("SSA"). (R. at 219, 329.)  Dr. Langgut assessed Plaintiff's memory, insight, judgement, and intellect.  Dr. Langgut concluded that Plaintiff's memory functioning was intact. (R. at 331).  Plaintiff had intact immediate recall ability and intact short-term memory. (Id.)  Similarly, Plaintiff's long term memory, while limited, remained intact. (Id.)  Plaintiff could not effectively problem solve or use higher-order, abstract reasoning. (R. at 222, 332.)  Plaintiff's insight into his situation was impaired, and he had a limited capacity for reflective thought. (R. at 222.)  Plaintiff's judgment was impaired, and he had a tendency to impulsively react without adequately considering the effect of his actions on others. (R. at 222, 332.)  Plaintiff's speed of thinking was in the normal range, and his thought processes were of "average coherence and moderately increased suggestibility." (R. at 222.)  Plaintiff earned a Full Scale IQ score of 79, a Verbal IQ of 81, and a Performance IQ score of 78. (R. at 222.)  These scores placed

Plaintiff in the borderline range of intellectual ability. (Id.)
Dr. Langgut concluded that Plaintiff's IQ scores were a valid
reflection of his abilities, since he had placed a good deal of
effort in the tasks presented before him. (Id.) Plaintiff's
cognitive abilities had not deteriorated during the time interval
between his first and second examinations. (R. at 332.)

Dr. Langgut found Plaintiff's substance abuse history to be
most telling. (R. at 332.) At the time of the examination,
Plaintiff stated that, currently, he often drank six cans of beer
daily, although he had consumed much more prior to his seizures.
(R. at 220, 330.) Plaintiff refused to acknowledge his
alcoholism, and defensively underestimated the harmful effects of
alcohol use. (R. at 220, 330.)

Plaintiff expressed a moderate degree of resentment toward
others and an "irritable and cantankerous attitude particularly
surrounding his alcohol use." (R. at 221, 331.) Plaintiff tended
to react in an "impulsive and regressed manner."(R. at 222, 332.)
He appeared angry, resentful, and hostile. (R. at 331.) Dr.
Langgut found that Plaintiff did not suffer from any delusions,
phobias, or hallucinations. (R. at 222.)

Dr. Langgut concluded that Plaintiff presented no "gross
evidence of neuropsychological impairment beyond those expected
by virtue of his chronic alcohol abuse and limited education."

(R. at 332.) Dr. Langgut further opined that Plaintiff's chronic use of alcohol "may contribute mightily to both his cognitive and personality impairments." (Id.) Dr. Langgut explained that Plaintiff's chronic use of alcohol deteriorated certain memory skills, and that discontinuing its use would allow "for some degree of rebound of these abilities." (Id.) Dr. Langgut concluded that, although Plaintiff was not able to use higher order reasoning in a beneficial manner, his general fund of information was within the average range indicating an ability to understand the world around him. (R. at 222, 223.)

8. Joseph W. Chuprevich, D.O., treating physician

Dr. Chuprevich began to treat Plaintiff in July 1997, when Plaintiff suffered two grand mal seizures. (R. at 181.) He continued to treat Plaintiff until December 3, 1998, while Plaintiff was in an alcohol treatment program at NCBHS[2]. (R. at 260.)

On June 10, 1999, Dr. Chuprevich examined Plaintiff at the request of Plaintiff's attorney. (R. at 335.) Dr. Chuprevich assessed Plaintiff's memory, concentration, insight, judgment, and intellect. Plaintiff had a tendency to be forgetful. (R. at

---

[2] Dr. Chuprevich's prior history of treating Plaintiff is discussed earlier in subheadings 2 and 3.

13

336.) He had difficulty with his concentration, in learning from
his prior experiences, and following through with directions
(Id.) Plaintiff became "angry and upset" when others identified
his mistakes. (Id.) He had severe difficulty in thinking
abstractly, indicating a severe limitation in his ability to
relate to the world around him. (R. at 335.) He had no insight
into his psychological difficulties. (R. at 336.) Plaintiff's
judgment was moderately impaired. (Id.) Plaintiff's failure to
perform simple subtraction indicated a "marked limitation in his
IQ."(R. at 335.) Plaintiff refused to see that he had any
problems with alcohol. (R. at 336.) Dr. Chuprevich stated that
Plaintiff's "denial of his problem is of psychotic proportions,
because clear evidence to the contrary does not change his
opinion." (Id.)

Dr. Chuprevich diagnosed Plaintiff with "Axis 2 Personality
Disorder Not Otherwise Specified[3] with organic, paranoid

---

[3] "Personality Disorder Not Otherwise Specified" is the
appropriate diagnosis for a "mixed" presentation in which
criteria are not meet for any single Personality Disorder, but
features of several Personality Disorders are present and involve
clinically significant impairment. Personality Disorders are
characterized by inflexible and maladaptive personality traits
that cause significant functional impairment or subjective
distress. The essential feature of a Personality Disorder is an
enduring pattern of inner experience and behavior that deviates
markedly from the experiences of the individual's culture and is
manifested in at least two of the following areas: cognition,
(continued...)

features." (R. at 336.)  Plaintiff's "severe personality disorder
may have been caused by a prior medical problem and chronic
alcohol abuse." (Id.)  Plaintiff's brief neurological examination
revealed evidence of mild cerebellar damage. (Id.)  Dr.
Chuprevich remarked that Plaintiff is "disabled because of his
mental illness." (Id.)

9.   SSA's Non-Examining, Consulting Physicians

Plaintiff's medical records were also reviewed by a number
of consulting physicians at the request of the Commissioner.  The
consulting physicians found that Plaintiff should avoid
concentrated exposure to heights and hazardous machinery.  Their
findings did not preclude Plaintiff from performing routine and
repetitive tasks.  Moreover, Plaintiff did not manifest any
functional limitations at the degree of limitation that satisfied
the Listings.  Accordingly, the physicians consistently concluded

---

[3](...continued)
interpersonal functioning, or impulse control. This enduring
pattern is inflexible and pervasive across a broad range of
personal and social situations and leads to clinically
significant distress or impairment in social, occupational, or
other important areas of functioning. The pattern is stable and
of long duration. The pattern is not due to the direct
physiological effects of a substance (e.g. alcohol).  American
Psychiatric Association : *Diagnostic and Statistical Manual of
Mental Disorders* 630-631 (4th ed. 1994).

that Plaintiff did not have any impairments that would require a
step 3 disability determination.

a.   William Fischer, PhD., non-treating, non-examining physician
     On January 12, 1998, Dr. Fischer assessed that Plaintiff's
mental impairment was based on the category *12.09 Substance
Addiction Disorders.* (R. at 237.)  Plaintiff did not manifest any
functional limitations at the degree of limitation that satisfied
the Listings. (R. at 244.)

b.   Phyllis Brister, PhD., non-treating, non-examining physician
     On July 1, 1998, Dr. Brister assessed that Plaintiff's
mental impairment was based on the category *12.09 Substance
Addiction Disorders*. (R. at 282.)  Plaintiff did not manifest any
functional limitations at the degree of limitation that satisfied
the Listings. (R. at 289.)

c.   Chansoo Kim, M.D., non-treating, non-examining physician
     On January 16, 1998, Dr. Kim opined that Plaintiff was
restricted to occasionally lifting 50 pounds and to frequently
lifting 25 pounds. (R. at 251.)  Dr. Kim determined that

16

Plaintiff should avoid concentrated exposure to heights and hazardous machinery. (R. at 254.)

d. Sandra A. Bilinsky, M.D., non-treating, non-examining physician

On June 21, 1998, Dr. Bilinsky did not find that Plaintiff was restricted to occasionally lifting 50 pounds and to frequently lifting 25 pounds. (R. at 274.) Dr. Bilinsky determined that Plaintiff should avoid concentrated exposure to heights and hazardous machinery, because of his susceptibility to seizures. (R. at 277.)

## C. The ALJ's Decision

On November 16, 1999, ALJ Welsch issued her decision, concluding that Plaintiff was not disabled, because he still could perform a significant number of jobs, despite his severe impairments. (R. at 19.) The ALJ emphasized that Plaintiff's severe impairments were not disabling even while he continued to abuse alcohol. (R. at 15, 18, 19.)

The ALJ properly employed a five step sequential evaluation process. *See generally* 20 C.F.R. § 416.920 (West 2002.); *Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999)(explaining the five

step sequential evaluation process). The ALJ found that Plaintiff had not engaged in any substantial gainful activity since the October 6, 1997 application date. (R. at 15.) Next, the ALJ concluded that Plaintiff had a medically determinable impairment that significantly limited Plaintiff's ability to perform basic work activities. (Id.) However, the ALJ determined that Plaintiff did not have an impairment that approaches the criteria of any listed impairments. (Id.) At Step 4, the ALJ determined that Plaintiff had no vocationally relevant past work. (R. at 18.) Finally, the ALJ relied upon the VE's testimony to conclude that an individual of Plaintiff's age, education, work experience, and functional limitations had the RFC to perform a significant number of jobs in Illinois. (R. at 19.)

The ALJ found that Plaintiff's mental impairments appeared to result from alcohol abuse. (R. at 18.) The ALJ determined that Plaintiff's cognitive impairments limited him to routine and repetitive tasks. (Id.) With regard to physical exertion, Plaintiff could perform at least the requirements of medium work, which involves lifting or carrying up to 25 pounds frequently and 50 pounds occasionally, and standing or walking for the greater part of the working day. (Id.) However, his infrequent susceptibility to seizures and continued abuse of alcohol precluded him from climbing or working at unprotected heights.

18

(Id.)  The ALJ determined that no other functional limitations "were established by substantial evidence." (Id.)

The ALJ found that Plaintiff's statements regarding his subjective symptoms and functional limitations were not credible. The ALJ stated that the medical evidence did not support Plaintiff's subjective complaints, and his daily activities and treatment history were not consistent with the limitations he described. (R. at 20.)

In evaluating medical evidence characterizing Plaintiff's RFC, the ALJ gave less weight to Dr. Chuprevich's June 10, 1999 report than to Dr. Langgut's report from the same month, which disclosed findings strikingly similar to those of Dr. Chuprevich. (R. at 18.) *See generally* 20 C.F.R. § § 416.945, 416.961.  In doing so, the ALJ determined that Plaintiff did not have a supportable limitation in social functioning, as indicated by Dr. Chuprevich's diagnosis of Axis 2 Personality Disorder Not Otherwise Specified.(R. at 19, 336.)  The ALJ reasoned that Dr. Chuprevich's conclusions were inconsistent with Plaintiff's admitted daily activities, and were based on incorrect information regarding Plaintiff's alcohol abuse. (R. at 18.)  The ALJ also reasoned that Dr. Chuprevich's conclusions were not supported by the narrative of his own evaluation. (Id.)

Accordingly, the ALJ relied upon Dr. Langgut's conclusions to assess Plaintiff's RFC. (Id.)

Finally, relying on the VE's testimony, the ALJ found that an individual of Plaintiff's age, education, work experience, and functional limitations had the RFC to perform a significant number of jobs in Illinois. (R. at 19.) *See generally* 20 C.F.R. § § 416.946, 416.966. Also, the ALJ determined that, even if she were to incorporate a limitation in social functioning, Plaintiff would nevertheless be able to work, because none of the occupations mentioned by the VE required regular interaction with other people. (R. at 19.) ALJ Welsch concluded that Plaintiff was not disabled, even if he were to have a supportable limitation in social functioning. (Id.)

## STANDARD OF REVIEW

In reviewing the ALJ's decision, the Court may not decide the facts, re-weigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see also Powers v. Apfel*, 207 F.3d 431, 434-435 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v.*

*Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989)(the ALJ has the
authority to assess medical evidence and give greater weight to
that which she finds more credible). Rather, the Court must
accept findings of fact that are supported by "substantial
evidence," 5 U.S.C § 706(2)(E), where substantial evidence is
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Herron*, 19 F.3d at 333
(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court is limited to determining whether the
Commissioner's final decision is supported by substantial
evidence and based upon the proper legal criteria. *Ehrhart v.
Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir.
1992). However, this does not mean that the ALJ is entitled to
unlimited judicial deference. The ALJ must consider all relevant
evidence and may not select and discuss only that evidence that
favors her ultimate conclusion. *Herron*, 19 F.3d at 333. In
addition to relying on substantial evidence, the ALJ must
articulate her analysis at some minimal level, and state her
reasons for accepting and rejecting "entire lines of evidence."
*Id.* Although the ALJ need not evaluate in writing every piece of
evidence in the record, *Id.*, she must articulate her reasons for
rejecting evidence "within reasonable limits" if there is to be
meaningful appellate review. *Young v. Sec. Of Health and Human*

*Servs.*, 957 F.2d 386, 393 (7th Cir. 1992). Indeed, the ALJ must build "an accurate and logical bridge" from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Yet, the ALJ need not spell out every step in her reasoning, provided that she has given sufficient direction that the full course of her decision may be discerned. *Guerico v. Shalala*, No. 93 C 323, 1994 WL 66102, at *9 (N.D.Ill. Mar. 3, 1994).

## SOCIAL SECURITY REGULATIONS

The Social Security Regulations prescribe a sequential five part test for determining whether a claimant is disabled. *See* 20 C.F.R. § § 404.1520, 416.920 (West 2002.) The ALJ must consider: (1) whether the claimant is presently unemployed; (2)whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to prelude gainful activity; (4) whether the claimant is unable to perform his past relevant work; (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.; see also Young*, 957 F.2d at 389. A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a finding of disability. *Id.* The claimant bears the

burden of proof at steps 1-4, but the burden shifts to the Commissioner at step 5. *Id.; see also Maggard*, 167 F.3d at 378.

The ALJ's analysis at step 5 typically involves an evaluation of the claimant's RFC to perform a particular category of work. *See* 20. C.F.R § § 416.920(f), 416.945. RFC is an assessment of claimant's remaining capacity for work despite his physical and mental limitations. 20 C.F.R § 416.945; *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999). RFC is "used as the basis for determining the particular types of work the claimant may be able to do," despite the claimant's impairment(s), and "is not a decision on whether the claimant is disabled." 20 C.F.R. 416.945. When a plaintiff's non-exterional impairments significantly diminish his ability to work, the Commissioner must introduce the testimony of a VE (or other similar evidence) to determine whether, given a plaintiff's RFC, there are a significant number of jobs in the national economy that a plaintiff can perform. *Bapp v. Bowen*, 802 F.2d 601, 603 (2nd Cir. 1986).

## DISCUSSION

Plaintiff presents two main arguments in support of his contention that the Commissioner's decision should be reversed and/or remanded. Plaintiff contends that substantial evidence

does not support the ALJ's decision because: 1) the ALJ improperly discredited his treating physician's opinion; and 2) the ALJ failed to mention in writing certain specified items of evidence. Next, Plaintiff contends that the ALJ erred in failing to conclude that Plaintiff would remain disabled if he were to stop his alcohol abuse.

In response to part 2 of Plaintiff's first argument, the Court emphasizes that the ALJ is not required to evaluate in writing every piece of evidence in the record. *Herron*, 19 F.3d at 333. As to Plaintiff's remaining arguments, the Court addresses each in turn.

## I.     The ALJ erred in improperly discrediting the opinion of Plaintiff's treating physician.

The Court finds that ALJ Welsch erred in two ways. She did not explain how the opinion of Plaintiff's treating physician, Dr. Chuprevich, was inconsistent with Plaintiff's admitted daily activities. And, she did not articulate legitimate reasons for discrediting Dr. Chuprevich's opinion.

## A.     ALJ Welsch failed to explain the stated inconsistency.

ALJ Welsch did not explain how the opinion of Plaintiff's treating physician was inconsistent with Plaintiff's admitted daily activities, and her failure to do so constitutes error.  An

24

ALJ must minimally articulate her reasons for crediting or discrediting evidence of disability. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)). An ALJ is required to "provide an explanation for her belief that the treating physician's opinion was inconsistent with plaintiff's admitted daily activities and her failure to do so constitutes error." *Clifford*, 227 F.3d at 870. ALJ Welsch merely mentioned that Dr. Chuprevich's opinion was inconsistent with Plaintiff's admitted daily activities, without providing an explanation. Therefore, ALJ Welsch erred, because she failed to explain how Dr. Chuprevich's opinion was inconsistent with Plaintiff's admitted daily activities. Moreover, it is not obvious from the record that Dr. Chuprevich's opinion is inconsistent with Plaintiff's admitted daily activities.

**B.  ALJ Welsch failed to articulate legitimate reasons for rejecting the treating physician's opinion.**

ALJ Welsch did not articulate legitimate reasons for rejecting the opinion of Plaintiff's treating physician, and her failure to do so constitutes error. An ALJ must give substantial weight to the opinion of a plaintiff's treating physician, unless she articulates specific and legitimate reasons for rejecting

that opinion. *Knight v. Chater*, 55 F.3d 309, 313-314 (7th Cir. 1995) (citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994)). ALJ Welsch rejected Dr. Chuprevich's opinion also because: 1) Dr. Chuprevich's conclusions "are based on incorrect information regarding Plaintiff's alcohol abuse;" and 2) Dr. Chuprevich's conclusions "are not supported by the narrative of his own evaluation." (R. at 18)

However, the record does not support the ALJ's assessment of Dr. Chuprevich's opinion. Contrary to the ALJ's finding, the record indicated that Dr. Chuprevich was well aware of Plaintiff's history of alcohol abuse. During Plaintiff's July 1997 hospitalization, Dr. Chuprevich attributed Plaintiff's seizures to his history of alcohol abuse. Moreover, Dr. Chuprevich treated Plaintiff while he was in an alcohol treatment program at NCBHS. Dr. Chuprevich discharged Plaintiff from that program on the grounds of futility, because Plaintiff would not stop drinking. In fact, in his submitted medical opinion, Dr. Chuprevich assessed that Plaintiff "fails to see that he has any problems with alcohol" and that "his denial is of psychotic proportions." (R. at 335.) The Court finds that Dr. Chuprevich was highly informed of Plaintiff's history of alcohol abuse, and that ALJ Welsch's conclusion to the contrary is not supported by the record.

Next, the Court disagrees with the ALJ's conclusion that Dr. Chuprevich's findings are not supported by his narrative. Dr. Chuprevich's narrative and administered tests support his conclusions that Plaintiff had memory, concentration, insight, judgement, and intellect impairments and had a diagnosis of Axis 2 Personality Disorder, Not Otherwise Specified, with paranoid features. Dr. Chuprevich's narrative reveals that he carefully observed and assessed Plaintiff's moods, memory, insight, judgement, and intellectual acuity.

In conclusion, ALJ Welsch's reasons for rejecting Dr. Chuprevich's opinion are not supported by the record. Therefore, ALJ Welsch erred, because she did not articulate legitimate reasons for rejecting Dr. Chuprevich's opinion.

## II. The ALJ's error is harmless, because it ultimately did not impact the outcome of the case.

Although the Court finds that ALJ Welsch improperly discredited Dr. Chuprevich's opinion, the hypothetical she posed to the VE incorporated all of the functional limitations identified in Dr. Chuprevich's opinion. Therefore, her error in rejecting Dr. Chuprevich's opinion is harmless, because it did not impact the outcome of the case. Rather, the testimony of the VE serves as substantial evidence supporting the ALJ's

determination that Plaintiff was capable of doing medium work,
with certain specified restrictions, and, therefore, was not
disabled.

Where an ALJ's factual findings are unreliable because of
serious mistakes or omissions, the Court must reverse the ALJ's
determination. *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir.
2000)(citing *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir.
1996)). However, if the Court is satisfied that no reasonable
trier of fact could have come to a different conclusion, then the
Court may affirm the ALJ's decision. *Id.* Not every mistake by an
ALJ so undermines a determination that it cannot be said to be
supported by substantial evidence. *Kolesar v. Shalala*, No. 93 C
3834, 1994 WL 30544, at *11 (N.D. Ill. Feb. 3, 1994). Harmless
errors are those that do not affect an ALJ's determination that a
claimant is not entitled to benefits. *Id.* (citing *Curry v.
Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In *Shramek*, the 7th Circuit affirmed that the ALJ's error in
improperly discrediting the opinion of the plaintiff's treating
physician was harmless, because it ultimately did not impact the
outcome of the case. *See Shramek*, 226 F.3d at 814-815. Although
the ALJ rejected the treating physician's opinion, the
hypothetical she posed to the VE incorporated all of the

functional limitations identified in the opinion of the treating physician. *Id.*

Similarly, the Court finds that the ALJ's rejection of Dr. Chuprevich's opinion ultimately did not impact the outcome of Plaintiff's case. Dr. Langgut, the examining physician whose opinion the ALJ gave controlling weight, and Dr. Chuprevich reached strikingly similar conclusions regarding Plaintiff's memory, concentration, insight, judgement, and intellectual impairments. Both physicians' findings regarding Plaintiff's functional limitations support the ALJ's finding that Plaintiff, at least, can perform routine and repetitive tasks. Neither physician concluded that Plaintiff's cognitive impairments preclude him from performing routine and repetitive tasks. However, one significant difference is that Dr. Chuprevich diagnosed Plaintiff with Axis 2 Personality Disorder, Not Otherwise Specified, whereas Dr. Langgut did not. Dr. Chuprevich's diagnosis indicated that the Plaintiff has significant distress or impairment in social, and/or occupational functioning that is not due to the direct physiological effects of a substance, such as alcohol. Obviously, a problem arose. Dr. Chuprevich's diagnosis indicated that Plaintiff's limitation in social functioning may preclude him from performing routine

and repetitive tasks in a work setting requiring regular interaction with other people.

At the hearing, the ALJ supplemented the hypothetical she posed to the VE by asking the VE whether the specified jobs would subject Plaintiff to regular interaction with other people. In doing so, the ALJ's hypothetical incorporated all of the functional limitations identified in the opinion of Dr. Chuprevich, which the ALJ improperly had discredited. The VE testified that none of the mentioned occupations required regular interaction with other people, but do require some interaction with a supervisor, such as when rare assembly line changes occur. ALJ Welsch concluded that, even if she were to incorporate a limitation in social functioning, Plaintiff would nevertheless be able to work, because none of the occupations mentioned by the VE required regular interaction with other people.

Admittedly, Dr. Chuprevich also made a disability conclusion independent from his conclusions regarding Plaintiff's functional limitations. However, a claimant is not entitled to disability benefits simply because his physician states that he is "disabled" or "unable to work." *Clifford*, 227 F.3d at 870. A physician's vocational conclusion is not "a medical opinion concerning the nature and severity of plaintiff's impairments." 20 C.F.R. § 416.927(d)(2). Morever, the Commissioner (or, here,

the ALJ), not a physician selected by a patient to treat him, decides whether a claimant is disabled. 20 C.F.R. § 416.927(e)(1).

Even accepting the functional limitations set forth by Dr. Chuprevich, the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence. The ALJ propounded a hypothetical to the VE that incorporated all of the functional limitations determined by Dr. Chuprevich, and the VE testified that a significant number of jobs existed in the national economy that would fall within those parameters. Plaintiff does not challenge the validity of the VE's conclusion. Nor does the Plaintiff contend that Dr. Chuprevich's conclusions satisfy the Listing level, thereby requiring a step 3 disability determination. *See generally* 20 C.F.R. § § 416.920(d), 416.925.

In conclusion, although, ALJ Welsch improperly discredited the opinion of Dr. Chuprevich, the hypothetical she posed to the VE incorporated all of the functional limitations identified in Dr. Chuprevich's opinion. Therefore, the ALJ's error is harmless, because it did not impact the outcome of the case. Rather, the testimony of the VE serves as substantial evidence supporting the ALJ's determination that Plaintiff was capable of doing medium work, with certain specified restrictions, and, therefore, was not disabled.

**III. The ALJ was not required to determine whether Plaintiff would remain disabled if he were to stop abusing alcohol.**

Plaintiff contends that the key question at step 5 of the sequential evaluation process is whether Plaintiff would remain disabled if he were to stop abusing alcohol. Plaintiff's argument misses the mark. ALJ Welsch would have been required to make such a determination only if she had found Plaintiff to be disabled. However, ALJ Welsch found that Plaintiff was not disabled, despite his severe impairments. ALJ Welsch found that Plaintiff could perform routine and repetitive tasks, under certain specified restrictions, even while he continued to abuse alcohol.

Plaintiff cites *Clark v. Apfel*, 98 F.Supp.2d 1182 (D.OR. 2000) to support his claim that the ALJ was required to determine whether Plaintiff would remain disabled if he were to stop abusing alcohol. However, *Clark* is readily distinguishable. In *Clark*, the ALJ found that the plaintiff was disabled, and that his addictions were material to the finding of disability. Because the plaintiff in *Clark* was found to be disabled, the ALJ was required to determine whether his alcoholism was material to his disability.

Conversely, in the instant case, ALJ Welsch found that Plaintiff was <u>not</u> disabled, even while Plaintiff abused alcohol.

32

Because ALJ Welsch determined that Plaintiff was not disabled, it would be illogical to require her to determine whether Plaintiff would <u>remain</u> disabled if he were to stop abusing alcohol. *See generally* 20 C.F.R. § 416.935(a). Therefore, the Court rejects Plaintiff's claim of error.

### CONCLUSION

ALJ Welsch erred in improperly discrediting the opinion of Plaintiff's treating physician. Although the ALJ rejected the treating physician's opinion, the hypothetical that the ALJ posed to the VE incorporated all of the functional limitations identified in the treating physician's opinion. Therefore, the ALJ's error is harmless, because it ultimately did not impact the outcome of the case.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion for Summary Judgment be, and the same hereby is, **GRANTED.**

Dated: August 16, 2002          ENTER:

ARLANDER KEYS
United States Magistrate Judge

33